RATTET, PASTERNAK & GORDON-OLIVER, LLP        planrev.doc
Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

ARLENE GORDON-OLIVER, ESQ

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                            Chapter 11

JUDDE PROPERTIES, INC.,                              Case No. 08 B 22891 (ASH)

                              Debtor.

Tax Id No. 30-027643
-----------------------------------------------------------X

## <u>PLAN OF REORGANIZATION</u>

     Judde Properties, Inc.("Judde" or the "Debtor"), hereby proposes the following Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

     Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject this Plan cannot be solicited from a holder of a Claim or Equity Interest until such time as the annexed Disclosure Statement has been approved by the Bankruptcy Court and has been distributed to holders of Claims and Equity Interests.  **ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ENCOURAGED TO READ THIS PLAN AND THE RELATED DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR TO REJECT THIS PLAN.  SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN THIS PLAN,**

**THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION**. To the extent that the Plan is inconsistent with the Disclosure Statement, the Plan will govern.

The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the construction of the terms and provisions set forth in this Plan.

## ARTICLE I - DEFINITIONS

For the purposes of the Plan, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1.1  "Allowed Administrative Claim" shall mean a claim for any cost or expense of administration in connection with the Chapter 11 case allowed under Section 503(b) of the Bankruptcy Code (as defined below) and entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual, necessary costs and expenses of preserving the Debtor's estate and of operating the business of the Debtor, all allowances of compensation for legal or other professional services or reimbursement of costs and expenses under Sections 330, 331 and 503 of the Bankruptcy Code or otherwise allowed by the Court, and all fees and charges assessed against the Debtor's estate pursuant to Chapter 123, Title 28, United States Code.

1.2  "Allowed Claim" shall mean any Claim or portion of a Claim (a) which has been scheduled pursuant to Section 521(1) of the Bankruptcy Code, other than a Claim scheduled by the Debtor as contingent, unliquidated or disputed; or (b) proof of which

has been filed pursuant to Section 501(a) of the Bankruptcy Code on or before the date designated by the Bankruptcy Court (as defined below) as the last date for filing Proofs of Claim (the "Bar Date"), and as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, Bankruptcy Rules (as defined below) or an order of the Bankruptcy Court, or (c) as to which any objection has been determined by a Final Order (as defined below) of the Bankruptcy Court allowing such claim or any portion thereof.

1.3 "Avoidance Actions" shall mean any cause of action assertable under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or state law if made applicable under such Bankruptcy Code sections.

1.4 "Ballot" shall mean the form transmitted to creditors with the Plan and Disclosure Statement, on which they may vote to accept or reject the Plan (as defined below) pursuant to Bankruptcy Rule 3018 and Section 1126 of the Bankruptcy Code.

1.5 "Bankruptcy Code" shall mean Title 11 U.S.C. Sections 101 et. seq., in effect on the Petition Date (as defined below).

1.6 "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York, White Plains Division, and any Court having jurisdiction to hear appeals therefrom.

1.7 "Bankruptcy Rule(s)" shall mean the Federal Rules of Bankruptcy Procedure as applicable to cases under Title 11 of the United States Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto.

1.8 "Bar Date" shall mean the date fixed by Order of the Bankruptcy Court by which Proofs of Claim of various categories must be filed against the Debtor which date has been fixed by the Bankruptcy Court as December 17, 2008.

1.9 "Business Day" shall mean any day other than a Saturday or Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

1.10 "Cash" shall mean legal tender of the United States of America or cash equivalents.

1.11 "Chapter 11 Case" shall mean the above-captioned case commenced by the filing of a voluntary petition by the Debtor seeking relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court on the Petition Date.

1.12 "Claim" shall mean a claim as defined in Section 101(5) of the Bankruptcy Code, including without limitation, claims arising under Section 502 of the Bankruptcy Code.

1.13 "Class" shall mean a class of holders of Claims or Shareholder Interests (as defined herein) described in Articles II and III of the Plan.

1.14 "Confirmation Date" shall mean the date upon which the Confirmation Order (as defined below) is entered by the Bankruptcy Court.

1.15 "Confirmation Hearing" shall mean the hearing held by the Court, following notice, to determine whether or not to enter a Confirmation Order.

1.16 "Confirmation Order" shall mean the order of the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code confirming the Plan.

1.17 "Contested Claim" shall mean a Claim against the Debtor that is (i) listed in

the Debtor's schedules of liabilities as disputed, contingent or unliquidated; (ii) listed in the Debtor's schedules of liabilities as undisputed, not contingent and liquidated and as to which a Proof of Claim has been filed with the Bankruptcy Court, to the extent the Proof of Claim exceeds the scheduled amount and which amount is not otherwise agreed to by the Debtor; (iii) that is not listed in the Debtor's schedules of liabilities, but as to which a Proof of Claim has been filed with the Bankruptcy Court; or (iv) as to which an objection has been filed.

1.18 "Creditor" shall mean: (i) an entity that has a Claim against the Debtor that arose at the time of or before the Petition Date concerning the Debtor; or (ii) an entity that has a Claim against the Debtor's estate of the kind specified in Sections 348(d), 502(f), 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.19 "Debtor" shall mean Judde Properties, Inc.

1.20 "Disclosure Statement" shall mean the Debtor's Disclosure Statement filed with the Court containing that information required under the Bankruptcy Code to be adequate in kind and detail, as is reasonably practicable under the circumstances, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.

1.21 "Disputed Claim" shall mean any Claim (other than an Allowed Claim) (i) which is scheduled pursuant to the Bankruptcy Code as disputed, contingent or unliquidated, or (ii) proof of which has been filed with the Bankruptcy Court and an objection to the allowance has been or is interposed within the period of time limitation fixed by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or an order

of the Bankruptcy Court for the filing of such objections, and as to which, such objection has not been determined by a Final Order (as defined below) of the Bankruptcy Court.

1.22 "Distribution Date" shall mean any date on which a distribution under the Plan is to be made to the holders of Allowed Claims.

1.23 "Effective Date" shall mean the date that is thirty (30) days after the Confirmation Date.

1.24 "Executory Contract" shall mean any of the contracts and unexpired leases to which the Debtor is a party or was a party as of the Petition Date and which is executory within the meaning of Section 365 of the Bankruptcy Code.

1.25 "Final Order" shall mean a Bankruptcy Court order or judgment which has not been reversed, stayed, modified, or amended and (i) as to which the time to appeal or seek review, rehearing, or certiorari has expired and as to which no appeal, petition for review, rehearing, or certiorari is pending or (ii) as to which any right to appeal or seek review, rehearing, or certiorari has been waived or (iii) an order or judgment which has been appealed, has been affirmed on appeal and as to which affirmation the time for further appeal has expired; provided, however, that no order or judgment shall be deemed not to be a Final Order solely because such order or judgment is subject to the filing of a motion for reconsideration pursuant to Section 502(e)(2) of the Bankruptcy Code or Bankruptcy Rules 3008 or 9024 or Rule 60 of the Federal Rules of Civil Procedure.

1.26 "Petition Date" shall mean June 27, 2008.

1.27 "Plan" shall mean this First Amended Plan of Reorganization and any

amendments hereto or modifications hereof made in accordance with the provisions of the Bankruptcy Code.

1.28 "Priority Claim" shall mean a Claim other than an Administrative Claim that is entitled to priority under Section 507(a)(2)-(8) of the Bankruptcy Code.

1.29 "Professional Persons" shall mean Rattet, Pasternak & Gordon-Oliver, LLP, counsel for the Debtor, and any other professionals that may have been heretofore retained per order of the Bankruptcy Court.

1.30 "Pro Rata" shall mean proportionally according to the total amount of Allowed Claims or Allowed Shareholder Interests in a particular Class.

1.31 "Secured Claim" shall mean an Allowed Claim secured by a valid, properly perfected and enforceable mortgage, security interest and/or lien on property and assets owned by the Debtor, to the extent of the value of such Creditor's interest in the Debtor's estate's interest in such property.

1.32 "Shareholder Interest" shall mean an equity interest based upon the ownership of the Debtor.

1.33 "Unclaimed Distribution" shall mean any distribution contemplated under the Plan unclaimed after the 120th day following the Distribution Date. Unclaimed Distributions shall include checks and the funds represented thereby (a) which have been returned as undeliverable without a proper forwarding address; (b) which have not been paid; and (c) which were not mailed or delivered because of the absence of a correct address.

1.34 "Unsecured Claim" shall mean any Claim which is not an Administrative

Claim, Priority Claim or Secured Claim that arose prior to the filing of the Debtor's Chapter 11 Case and includes, without limitation, Claims based upon pre-petition trade accounts payable or a Claim based upon the rejection of an executory contract during pendency of the Chapter 11 Case.

**ARTICLE II - DESIGNATION OF CLASSES OF CLAIMS**
**AND INTERESTS**

All Claims, as defined herein and in Section 101(5) of the Bankruptcy Code against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, and all Interests in the Debtor, whether resulting in an Allowed Claim or an Allowed Interest or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

2.1 <u>Classification of Claims</u>. Section 2.2 sets forth the designation of the Classes of Claims and Interests. A Claim or Interest is classified in a particular Class for voting and distribution purposes only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class or Classes to the extent any remainder of the Claim or Interest qualifies within the description of that different Class or Classes. Unless otherwise provided, to the extent a Claim or Interest qualifies for inclusion in a more specifically defined Class than a more generally defined Class, it shall be included in the more specifically defined Class. Each of the following sections of this Article II provides explanations of the different Claim classifications.

2.2 <u>Classes</u>. For purposes of the Plan, those persons holding Claims against, or Interests in, the Debtor are grouped in accordance with Section 1122 of the Bankruptcy Code as follows:

<u>Class 1</u> - shall consist of the Allowed Tax Claims of the City of New

Rochelle.

              <u>Class 2</u> - shall consist of the Allowed Secured Claims of Zions First National Bank.

              <u>Class 3</u> - shall consist of the Allowed Secured Claim of Empire State Certified Development Corp as servicing agent for the Small Business Administration.

              <u>Class 4</u> - shall consist of the Allowed Unsecured Claims of Consolidated Edison.

              <u>Class 5</u> - shall consist of the holders of any or all Allowed Shareholder Interests in the Debtor.


## ARTICLE III - <u>TREATMENT OF CLAIMS AND CLASSES UNDER THE PLAN</u>

**Satisfaction of Claims.** The treatment of and consideration to be received by holders of Allowed Claims or Interests pursuant to Article III of the Plan shall be in full satisfaction, release and discharge of their respective Claims or Interests against the Debtor and the holders of any Interest in the Debtor.

**3.1 <u>Unclassified Claims</u>:**

    (a) <u>Allowed Administrative Claims Other Than Claims of Professionals</u>: The holders of Allowed Administrative Claims shall be paid in accordance with the terms and conditions of any relevant contract or other agreement, or, if there is no such contract or agreement, then in full on the Effective Date, or upon such other terms as may be agreed upon by the Debtor and such claimants. Allowed Administrative Claims shall include unpaid fees, if any, assessed against the Estate pursuant 28 U.S.C.

Section 1930.

(b) <u>Administrative Claims of the Debtor's Professionals</u>: Allowed Administrative Claims of professionals duly retained by Order of the Bankruptcy Court shall be paid in full on the Confirmation Date, or as set forth below.

The only professionals retained in the Chapter 11 Case are Rattet, Pasternak & Gordon-Oliver, LLP as attorneys for the Debtor and Klinger & Klinger, LLP as accountants for the Debtor, who are expected to be owed, as of the Confirmation Date, the estimated net amount of $95,000.00.

The professionals employed by orders of the Bankruptcy Court to the extent awarded pursuant to Section 330 of the Bankruptcy Code shall be paid (1) fifty- percent (50%) of said administrative claims on the Confirmation Date; (2) twenty-five percent (25%) within 90 days of the Confirmation Date; and (3) the remaining twenty-five percent (25%) of said claim within 180 days of the Confirmation.

**These claims are unimpaired under the Plan, and accordingly, such Claimants are not entitled to vote on the Plan**

A. **TREATMENT OF CLASSIFIED CLAIMS**

**3.2      Class 1:**      Class 1 consists of the Allowed Tax Claims of the City of New Rochelle in the amount of $82,000.00. The holder of the Allowed Class 1 Tax Claims shall retain any validly filed tax liens and shall receive deferred cash payments in equal monthly installments over a period not exceeding five (5) years after the Filing Date with interest at the rate prescribed by the City of New Rochelle until such claims are paid in full. The first payments shall commence as soon as practicable after the

Effective Date but in no event later than thirty (30) days after the Effective Date.

**Class 1 Claims are impaired within the meaning of Section 1124 and Section 1126(d) of the Code.**

**3.3    Class 2**:   Class 2 consists of the Allowed Secured Claim of Zions First National Bank ("Zions Bank") in the amount of $759,373.07, as of the Petition Date. The holder of the Allowed Class 2 Claim shall retain its mortgage lien on the Debtor's real property located at 25 Cologni Avenue, new Rochelle, New York and shall be paid, in accordance with the agreement reached with the Class 2 Creditor.

The $660,000 promissory note secured by such mortgage lien shall be amended to provide that (i) interest on such note shall be fixed as of the Effective Date at 6.5% per annum; (ii) the term of such note shall be fixed at 15 years from the Effective Date; and (iii) equal monthly payments of $5,815 shall be due and payable on or before the first day of the month following the Effective Date and on or before the first day of each month thereafter through the end of the term at which time any remaining amount due under the amended note and other loan documents shall become due and payable. The arrearages under the loan document shall be fixed (subject to adjustment as set forth hereinafter) at $114,612.27 as of the Effective Date.  Pursuant to the agreement with Zions Bank, the Debtor shall make payments to Zions Bank on behalf of the Allowed Secured Claim as follows:  (a) monthly payments in the amount of $5,815 in accordance with the promissory note as amended by the Plan; and (b) monthly payments in the amount of $4,281.35 commencing on or before the first day of the month following the Effective Date and the first day of each month thereafter for a

period of 29 months, representing payment in full of the arrearages together with interest on such arrearages at 6.5% per annum. The Debtor shall also be required to make all adequate protection payments under the Stipulation and Order Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. § 363, Providing Adequate Protection Thereto Pursuant to 11 U.S.C. §§ 361 and 362 and Granting Stay Relief Pursuant to 11 U.S.C. § 362, So Ordered by the Bankruptcy Court on September 18, 2008, through the Confirmation Date. Since the arrearage amount under the Plan is approximate due to the continuing accrual of interest, fees and costs and the continuing adequate protection payments being made by the Debtor, the principal balance of the amended promissory note shall be adjusted by any over or under payment of arrearages.

Except as otherwise provided in the Plan, Zion Bank's loan documents and guarantees shall continue in full force and effect. The guarantors of the loan shall be required to execute reaffirmations of their guarantees as a condition of Plan confirmation. In the event that the Debtor fails to make any of the payments required to be made to Zions Bank under the Plan or otherwise defaults under the loan documents, Zions Bank shall be granted relief from the automatic stay, to the extent the automatic stay still applies, to proceed with the sale of the Building pursuant to the Judgment of Foreclosure and Sale obtained by Zion's Bank pre-petition or to take such other action as Zions Bank deems appropriate, upon five (5) business days notice to the Debtor and the United States Trustee and upon the filing of an Affidavit of Default with the Court allowing the Debtor fifteen (15) business days to cure any such defaults. **Class 2**

**Claim is impaired within the meaning of Section s 1124 and Section 1126(d) of the Code.**

**3.4     Class 3**:  Class 3 consists of the Allowed Secured Claims of the Empire State Certified Development Corp. as administrator for the United States Small Business Administration (the "SBA") in the total amount as of February 1, 2009 of $341,036.31 consisting of principal in the amount $324,153.17 and interest in the amount of $16,883.14 as documented by various loan documents between Debtor and SBA (the "SBA Loan" and "SBA Loan Documents").  The holder of the Allowed Class 3 Claims shall retain its mortgage lien on the Debtor's real property located at 25 Coligni Avenue, New Rochelle, New York and be paid, in accordance with agreement reached with the SBA as follows:  (i)  the sum of $3,358.00 per month commencing March 1, 2009 through and including December 1, 2009 which amount will be applied towards interest arrears, current accruing monthly interest and legal fees and expenses; (ii) as of January 1, 2010, the then loan balance will be reamortized over a 15 year term at the note rate of interest of 4.63875% which will be paid in equal monthly installments of $2,502.80 per month commencing January 1, 2010 through and including December 1, 2015.  On December 31, 2015 there will be due a balloon payment of all remaining unpaid principal, interest and any other amounts as allowed under the existing loan documents.  Debtor shall make the payments set forth herein by ACH auto-debit and shall execute such forms as are necessary to effectuate this payment method.  In addition to all other events of default set forth in the SBA Loan Documents, a default by the Debtor under any of the terms of its Plan shall be an event of default under the SBA

Loan Documents. Except as modified herein, all existing loan documents between SBA and the Debtor shall remain in full force and effect including, but not limited to, the requirement of the Debtor and Guarantors to provide annual financial statements and copies of tax returns. As a requirement of SBA's consent to the terms set forth herein, the Guarantors of the SBA Loan shall provide written evidence of consent to such terms and shall reaffirm their guarantees.

**Class 3 Claim is impaired within the meaning of Section 1124 and Section 1126(d) of the Code.**

**3.5     Class 4**: Class 4 consists of the Allowed Unsecured, Non-Priority Claim of Con Edison in the amount of $2,710.00. Class 4 Claims shall be paid in full, in cash on the Effective Date.

**Class 4 Claims is impaired under the Plan and is deemed to accept the Plan.**

**3.6     Class 5**: Class 5 consists of the equity interest in the Debtor held by Ralph Essien. The holder of the Class 5 claim shall retain his equity interests in the Reorganized Debtor.

**The Class 5 Claim is unimpaired pursuant to Section 1126 of the Code.**

3.7 <u>Full and Final Satisfaction.</u>   Performance of all of the obligations hereunder shall be in full and final satisfaction, settlement, release and discharge of all Claims against the Debtor.

3.8 <u>Acceleration</u>. In the event of a sale or refinance of the Debtor's property, the Debtor will pay all Allowed Claims in full and in cash at closing.

3.9 Blank Ballots.  Any ballot executed by the holder of an Allowed Claim or Interest that does not indicate an acceptance or rejection of the Plan shall be deemed to be an acceptance of the Plan, in the amount set forth on the Debtors' schedules as may be amended.

3.10 Deemed Acceptance By Class of Impaired Claimholders: Any Impaired Class which fails to vote either to accept or reject the Plan shall be deemed to accept the Plan.


## ARTICLE IV - <u>MEANS FOR EXECUTION</u>

4.1  The Plan shall be funded through a combination of (a) the Debtor's continuing operations and (b) the contributions of the Debtor's affiliate Methuselah Associates, LLC, ("Methuselah") as are necessary to consummate the Plan and make payments required hereunder.  Methuselah agrees to guaranty the payments required hereunder. The Debtor shall first make the contributions necessary to make the payments of the amounts required on confirmation, namely Administrative Claims and any United States Trustee fees due pursuant to 28 U.S.C. 1930, if any, that are unpaid as of the Effective Date. The Debtor and Methuselah shall provide attorneys for the Office of the United States Trustee and the Court with proof of ability to pay amounts required on confirmation at the hearing on the approval of the Debtor's Disclosure Statement submitted in connection with the Plan. In the event of a sale or refinance of the Debtor's property, all Allowed Claims shall be paid in full at closing.

## ARTICLE V - <u>EXECUTORY CONTRACTS</u>

5.1 <u>Assumption of Executory Contracts</u>. Any contract that is executory, in whole or in part, to which the Debtor is a party and which has not been rejected pursuant to Section 365 and 1123 of the Bankruptcy Code during the pendency of the Chapter 11 case, shall be deemed assumed as of the Confirmation Date.

5.2 <u>Cure of Defaults</u>. As to any executory contracts assumed pursuant to the Plan, the Reorganized Debtor shall, pursuant to the provisions of Section 1123(a)(5)(G) of the Bankruptcy Code, cure all defaults existing under and pursuant to such executory contract by paying the amount, if any, claimed by any party to such executory contract either in a proof of Claim, which proof of Claim shall be filed with the Court within thirty (30) days of such assumption, or as set forth in the Debtor's schedules. Payment of such Claims shall be made on the later of (i) thirty (30) days after the expiration of the period for filing an objection in respect of any proof of claim or (ii) thirty (30) days after an order of the Bankruptcy Court allowing such Claim becomes a Final Order.

## ARTICLE VI - <u>RESOLUTION OF DISPUTED CLAIMS & RESERVES</u>

6.1 <u>Objections</u>.  An objection to the allowance of a Claim shall be in writing and may be filed with the Bankruptcy Court by the Debtor or any other party in interest at any time on or before the Effective Date, or within such other time period as may be fixed by the Bankruptcy Court. Notwithstanding the foregoing, the Debtor shall file any and all objections to Claims no later than ninety (90) days after the Effective Date.

6.2 <u>Amendment of Claims</u>.  A Claim may be amended prior to the Effective Date

only as agreed upon by the Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules.  After the Effective Date, a Claim may be amended as agreed upon by the holder thereof and the Debtor to decrease, but not increase, the face amount thereof.

6.3  <u>Reserve for Disputed Claims</u>.  The Debtor shall reserve for account of each holder of a Disputed Claim that property which would otherwise be distributable to such holder on such date were such Disputed Claim an Allowed Claim on the Effective Date, or such other property as the holder of such Disputed Claim and the Debtor may agree upon.  Notwithstanding the foregoing sentence, the Debtor may reserve, with the approval of the Bankruptcy Court, with respect to one or more Disputed Claims, less than that amount of cash which would otherwise be distributable to the holder of such Claim were such Disputed Claim(s) an Allowed Claim(s) on the Effective Date.  The property so reserved for the holder, to the extent such Disputed Claim is allowed, and only after such Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such holder.

6.4  <u>Distributions to Holders of Subsequently Allowed Claims</u>.  Unless another date is agreed on by the Debtor and the holder of a particular subsequently Allowed Claim, the Debtor shall, within ten (10) days after an Order is entered by the Bankruptcy Court, and after such Order becomes Final and Non-Appealable, make such distribution consistent with the terms of the Plan.  With respect to the Allowed Amount of such theretofore Disputed Claim is determined, the Debtor will distribute to

such holder with respect to such subsequently Allowed Claim that amount, in cash, from the cash held in reserve for such holder and, to the extent such reserve is insufficient, from any other source of cash otherwise available to the Debtor, equal to that amount of cash which would have been distributed to such holder from the Effective Date through such distribution date had such holder's subsequently Allowed Claim been an Allowed Claim on the Effective Date. The holder of a subsequently Allowed Claim shall not be entitled to any interest on the Allowed Amount of its Claim, regardless of when distribution thereon is made to or received by such holder.

## ARTICLE VII - EFFECT OF CONFIRMATION

7.1 <u>Vesting of Property</u>. On the Confirmation Date, title to and possession of any and all property of the estate, real or personal, shall be re-vested in the Reorganized Debtor free and clear of all liens, claims, interests and encumbrances of any kind (except for any liens created by purchase money security interests which are duly perfected and enforceable), subject to and except as otherwise provided in the Plan.

7.2 <u>Discharge Granted Under Plan</u>. The Debtors' discharge shall be governed by Bankruptcy Code section 1141(d)(1).

7.3 <u>Releases</u>. Any consideration distributed under the Plan shall be in exchange for and in complete satisfaction and release of all Claims of any nature against the Debtor or any of its assets or properties.

7.4 <u>Limited Release of Promulgators of Plan</u>. Neither the Debtor, nor any of its respective members, shareholders, officers, directors, employees, attorneys, advisors

or agents shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, or arising out of the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan except for fraud, willful misconduct or gross negligence. This provision is only effective to the extent provided for under Section 1125(e) of the Bankruptcy Code and to the extent it does not conflict with DR 6-102 of the Code of Professional Responsibility.

7.5 <u>Plan Injunction</u>. Except as otherwise expressly provided in the Plan, any and all entities who have held, hold or may hold Claims or Interests against or in the Debtor shall, as of the Confirmation Date, be enjoined from:

(a) commencing, conducting, or continuing, in any manner, any suit, action, or other proceeding of any kind (including, without limitation, in any judicial, arbitral, administrative or other forum) against the Debtor arising out of any act or omission of the Debtor;

(b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collection or otherwise recovering by any manner or means, whether directly or indirectly, or any judgment, award, decree, or order against the Debtor with regard to such entities' Claim against the Debtor;

(c) creating, perfecting or otherwise enforcing, in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the property of the Debtor, or any successor-in-interest to the Debtor;

(d) asserting any set off, right of subrogation or recoupment of any kind, directly

or indirectly, against any obligation due the Debtor, the property of the Debtor, or any successor-in-interest to the Debtor;

(e) acting in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

7.6 <u>Payment of Estate Professionals for Post-Confirmation Date Services.</u> The reasonable compensation and out-of-pocket expenses incurred by professionals retained during the Chapter 11 Case and such other professional persons employed by the Debtor shall be paid by the Debtor within ten (10) days upon presentation of invoices for such post-confirmation professional services.

All disputes concerning post-confirmation fees and expenses shall be subject to Bankruptcy Court jurisdiction.

## ARTICLE VIII - PROVISIONS CONCERNING DISTRIBUTIONS

8.1 <u>Manner of Payments under the Plan</u>.  Payments to be made by pursuant to the Plan shall be made by check drawn on a domestic bank.

8.2 <u>Fractional Cents</u>. Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (up or down).

8.3 <u>Unclaimed Cash</u>. Except as otherwise provided herein, in the event any Claimant fails to claim any distribution within four (4) months from the date of such distribution, such Claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such cash was distributed shall be treated

as a disallowed Claim. In this regard, distributions to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be designated by a Creditor. The Disbursing Agent shall notify the Debtor of all returned distributions. All unclaimed cash shall be returned to the Reorganized Debtor.

8.4 Disputed Payments or Distribution. In the event of any dispute between and among Claimants (including the entity or entities asserting the right to receive the disputed payment or distribution) as to the right of any entity to receive or retain any payment or distribution to be made to such entity under this Plan, the Debtor may, in lieu of making such payment or distribution to such entity, make it instead into an escrow account or to a distribution as ordered by a court of competent jurisdiction as the interested parties to such dispute may otherwise agree among themselves.

## ARTICLE IX - EVENTS OF DEFAULT

9.1 Events of Default. The occurrence of any of the following events shall constitute an event of default under the Plan ("Event of Default"):

(a) The failure of the Debtor, after receipt of ten (10) business days written notice, to make any payment required to be made under the Plan, which failure, prior to the receipt of the ten (10) days written notice, shall have remained uncured for a period of thirty (30) days after the date such payment is required to be made, unless the time for such payment has been extended in accordance with the Plan.

(b) The failure of the Debtor to comply with any of the other covenants contained

22

in the Plan, which failure shall remain uncured for a period of thirty (30) days after the Debtor has received ten (10) days written notice of such failure.

9.2 <u>Effect of Default</u>. In the event that the Debtor defaults under the provisions of the Plan, and such default is not cured, then, at the option of any creditor or the United States Trustee, a motion may be filed with the Bankruptcy Court seeking an Order of the Bankruptcy Court compelling the Debtor to make such payment or act in a manner consistent with the provisions of the plan or seeking the conversion the case to a Chapter 7 proceeding.

<b><u>ARTICLE X – POST-CONFIRMATION REPORTS AND FEES</u></b>

10.1 The Debtor shall be responsible for filing post-confirmation disbursement reports with the Bankruptcy Court and shall pay all quarterly fees required under 28 U.S.C. Section 1930 until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case, and paying such fees as may be levied by the U.S. Trustee pursuant to 28 U.S.C. Section 1930 as are assessed.

<b><u>ARTICLE XI - RETENTION OF JURISDICTION</u></b>

11.1 The Debtor and such other applicable parties in interest as set forth in this Plan reserve the right, as set forth in this Plan, to institute preference and fraudulent conveyance actions, and object to the allowance of Claims for a period of ninety (90) days after the Effective Date.

11.2 The Bankruptcy Court shall retain jurisdiction of the Chapter 11 case:

a) To determine all controversies relating to, or concerning, the allowance of

Claims upon objection to such Claims by any party in interest;

b) To determine requests for payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including any and all applications for compensation for professional and similar fees;

c) To determine and, if necessary, liquidate, any and all Claims arising from the rejection of any executory contracts;

d) To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C Sections 157 and 1334;

e) To determine all disputed, contingent or unliquidated Claims;

f) To modify this Plan pursuant to Section 1127 of the Code, or to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order to the extent authorized by the Code;

g) To make such orders as are necessary or appropriate to carry out the provisions of this Plan;

h)  To resolve controversies and disputes regarding the interpretation or enforcement of the terms of this Plan; and

i)  To enter a final decree closing the Chapter 11 Case.

## ARTICLE XII – CREDITOR'S COMMITTEE

12.1 Appointment. An Official Committee of Unsecured Creditors has not been appointed in this Chapter 11 Case.

## ARTICLE XIII - GENERAL/MISCELLANEOUS PROVISIONS

13.1 <u>Modification of the Plan</u>. The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation Date or as soon as practicable thereafter.  After the Confirmation Date, the Debtors may, subject to order of the Bankruptcy Court, and in accordance with Section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

13.2 <u>Notices</u>. All notices and correspondence should therefore be forwarded in writing to:

RATTET, PASTERNAK & GORDON-OLIVER, LLP<br>
550 Mamaroneck Avenue<br>
Harrison, New York 10528<br>
(914) 381-7400<br>
Attn: Arlene Gordon-Oliver, Esq.

13.3 <u>Post-Effective Date Powers</u>. After the Effective Date, the powers of the Debtor shall include, but not be limited to, the following:

a) Review of all claims and proposed distributions to Creditors pursuant to the Plan;

b) Review and participation in all pending and further litigation before the Bankruptcy Court;

c) Authority to make any objections to Claims, where appropriate, as well as authority to commence adversary proceedings on behalf of the with respect to avoidance actions under Sections 547 through 552 of the Bankruptcy Code; and

d) Such other responsibilities and obligations as may be vested in the Debtor or

as may assumed pursuant to order of the Bankruptcy Court or pursuant to this Plan or the Bankruptcy Code.

13.4 <u>Article and Section References</u>. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan; words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

13.5 <u>Payment Dates</u>. If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, then the making of such payment or performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date.

13.6 <u>Enforceability</u>. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

13.7 <u>Applicable Law</u>. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the law of the State of New York.

13.8 <u>Successors and Assigns</u>. The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

13.9 <u>Reservation of Rights</u>. Neither the filing of this Plan, nor any statement or provision contained herein, be or be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Chapter 11 case.

Dated: March 9, 2009

JUDDE PROPERTIES, INC.,
Debtor

By: _/s/ Ralph Essien_____
      Ralph Essien, President

METHUSELAH ASSOCIATES, LLC,
as Guarantor

By: ___/s/ Ralph Essien_____
      Ralph Essien, Managing Member

RATTET, PASTERNAK & GORDON-OLIVER, LLP
Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

By:___/s/ Arlene Gordon-Oliver_
      Arlene Gordon-Oliver (5076)