RATTET, PASTERNAK & GORDON-OLIVER, LLP

Fee AppFinal2

Counsel to the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400
Arlene Gordon-Oliver

**Hearing Date: April 21, 2009**
**Time: 11:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:

JUDDE PROPERTIES, INC.,

                         Debtor.

Tax Id No. 30-027643
-------------------------------------------------------------X

Chapter 11

Case No. 08 B 22891 (ASH)

## FINAL APPLICATION FOR ALLOWANCE OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES OF RATTET, PASTERNAK & GORDON-OLIVER, LLP, AS COUNSEL FOR THE DEBTOR-IN-POSSESSION

**TO:    THE HONORABLE ADLAI S. HARDIN, JR.**
**         UNITED STATES BANKRUPTCY JUDGE:**

The Application of Rattet, Pasternak & Gordon-Oliver, LLP, (the "Applicant" or

"RPGO"), as bankruptcy counsel (the "Bankruptcy Counsel ") for the debtor and debtor-in-

possession, (the "Debtor"), and the Applicant herein, respectfully represents as follows:

    1.    Robert L. Rattet, Jonathan S. Pasternak, Arlene Gordon-Oliver and Dawn K.

Arnold are members of Applicant's firm and are duly admitted to practice before this Court.

James B. Glucksman and Scott Steinberg are senior associates of Applicant's firm, and Erica R.

Feynman, Julie A. Cvek and Kendra Goodman are junior associates of Applicant's firm. Richard

RATTET, PASTERNAK & GORDON-OLIVER, LLP
Counsel to the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400
Arlene Gordon-Oliver

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                          Chapter 11

JUDDE PROPERTIES, INC.,                         Case No. 08 B 22891 (ASH)

                    Debtor.

Tax Id No. 30-027643
-------------------------------------------------------------x

## FINAL APPLICATION FOR ALLOWANCE OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES OF RATTET, PASTERNAK & GORDON-OLIVER, LLP, AS COUNSEL FOR THE DEBTOR-IN-POSSESSION

**TO:   THE HONORABLE ADLAI S. HARDIN, JR.
       UNITED STATES BANKRUPTCY JUDGE:**

The Application of Rattet, Pasternak & Gordon-Oliver, LLP, (the "Applicant" or

"RPGO"), as bankruptcy counsel (the "Bankruptcy Counsel ") for the debtor and debtor-in-

possession (the "Debtor"), and the Applicant herein, respectfully represents as follows:

1.     Robert L. Rattet, Jonathan S. Pasternak, Arlene Gordon-Oliver and Dawn K.

Arnold are members of Applicant's firm and are duly admitted to practice before this Court.

James B. Glucksman and Scott Steinberg are senior associates of Applicant's firm, and Erica R.

Feynman, Julie A. Cvek and Kendra Goodman are junior associates of Applicant's firm. Richard

1

J. Rubin, Esq. is of counsel to Applicant's firm. Certain of these individuals have performed professional services on behalf of the Committee relating to these Chapter 11 cases.

2.       This is a final application for professional allowances pursuant to Sections 330 and 503(b), covering services rendered by the Applicant to the Debtor from June 27, 2008, the date the Court approved retention of RPGO *nunc pro tunc*, through February 28, 2009 (the "Fee Period"), plus necessary and reasonable disbursements.

3.       Robert L. Rattet, Esq. has been practicing law for a period of approximately forty (40) years, having specialized in insolvency proceedings for the same period of time; Jonathan S. Pasternak, Esq. has approximately eighteen (18) years of experience; and Arlene Gordon-Oliver, Esq. has approximately sixteen (16) years of bankruptcy experience. James B. Glucksman, Esq. has over twenty-six (26) years of experience in insolvency proceedings; Scott Steinberg has over twenty five (25) years of bankruptcy experience; Dawn K. Arnold has approximately thirteen (13) years of bankruptcy experience; Erica R. Feynman is a sixth year associate, and Julie A. Cvek and Kendra Goodman are fourth year associates of Applicant.

## LEGAL STANDING OF MEMBERS OF APPLICANT

4.       Mr. Rattet has participated in seminars, and lectured on various bankruptcy and related subjects before the New York State Bar Association, Westchester County Bar Association, and Contemporary Creditmen's Club, as well as numerous other organizations throughout the New York area.  Mr. Rattet is a member of the Bankruptcy Lawyers Bar Association, the American Bankruptcy Institute and the Commercial Law League of America - Bankruptcy and Insolvency Section.

5.     Mr. Rattet has acted in various professional capacities in other bankruptcy and insolvency proceedings including serving as attorney for Debtor, creditors' committees, Chapter 7 trustees and as an operating trustee. Mr. Rattet is also a certified mediator in the Bankruptcy Courts for the Southern District of New York.

6.     Mr. Pasternak is a member of numerous national and regional bankruptcy and commercial law associations and has lectured throughout the metropolitan area. Mr. Pasternak has represented numerous Debtor, trustees and creditors committees in the Chapter 11 arena and previously practiced in the areas of corporate and real estate law.

7.     Ms. Gordon-Oliver is a member of various national and local bar associations and a frequent speaker on bankruptcy issues both locally and nationally. Ms. Oliver is also a Justice on the Greenburgh Town Court, Westchester County, New York, a position to which she was elected in November, 2007 for a four (4) year term. She is a past president of the Association of Black Lawyers of Westchester County. She currently serves as the co-chair of the Bankruptcy Committee of the Westchester County bar Association and also serves as the association's Assistant Treasurer. Ms. Gordon-Oliver is the current chairperson for the Bankruptcy Section of the National Bar Association, a position she was elected to in 2001 and she also a past member of the NBA's Board of Governors. Ms. Gordon-Oliver is an elected delegate from the Ninth Judicial District to the House of Delegates for the New York State Bar Association. In addition to the foregoing bar association affiliations, she was recently appointed as a member to the Special Committee to Review the Code of Judicial Conduct for the New York State Bar Association. Her other memberships and association involvement include, the New York State Magistrates Association, the Westchester County Magistrates Association, the National Association of

3

Women Judges., member of the New York State Bar Association, the Women's Bar Association of Westchester, the Fellows of The New York State Bar Foundation, the Women's Bar Association of New York, The National Bankruptcy Institute, the American Bankruptcy Institute and the American Bar Association.

8. Mr. Rattet, Mr. Pasternak and Ms. Gordon-Oliver have extensive and successful experience in insolvencies and bankruptcy-related litigation involving encumbered real estate and personal property and in the rehabilitation of troubled businesses. Recently, Applicant was ranked as the 2nd Leading Debtor firm by the "Bankruptcy Insider" in terms of case assignments.

## FORMAT OF APPLICATION

9. Applicant makes this application for (i) allowances for reasonable compensation for the professional services rendered by Applicant as conflicts counsel to the Committee in this Chapter 11 proceeding; and (ii) reimbursement of actual and necessary out-of-pocket disbursements incurred in the rendition of all required professional services on behalf of the Committee.

10. The professional services for which allowances are sought by Applicant were rendered solely on behalf of the Committee. At the time of the retention, Applicant and the Committee agreed, subject to further review and order of the Bankruptcy Court, that Applicant's billing rate at that time would be:

| | |
|---|---|
| Partners | $400 to $575 |
| Of Counsel | $425 |
| Associates | $275 to $400 |
| Paraprofessionals | $125 |

11.     Since the time of Applicant's initial retention, Applicant's billing rates have increased as of January 1, 2009, and are currently as follows:

| | |
|---|---|
| Partners | $450 to $625 |
| Of Counsel | $475 |
| Associates | $325 to $425 |
| Paraprofessionals | $150 |

12.     In order to minimize the cost to the estate, wherever possible, Applicant's junior associates have performed services on behalf of the Debtor in order to minimize the costs of administration to the estate.

13.     Applicant received a net pre-petition retainer in the amount of $7,468.501 which amounts were applied to fees and expenses in connection with the administration of these Chapter 11 cases.

14.     Annexed hereto as **Exhibit "A"** is a certification by Arlene Gordon-Oliver, made pursuant to the General Order M-150, the Administrative Order enacted by the United States Bankruptcy Court for the Southern District of New York, dated April 19, 1995 ("General Order M-150"), as well as the Guidelines for Reviewing Applications For Compensation And Reimbursement Of Expenses Filed Pursuant to 11 U.S.C. § 330, as promulgated by the United States Trustee on January 30, 1996 ("U.S. Trustee Guidelines").

15.     Applicant maintains precise and detailed records of time expended in the rendition of all professional services. In accordance with the Guidelines for Reviewing Applications For Compensation as promulgated by the United States Trustee dated March 22, 1995, a breakdown of time entries by project category, and a summary cover sheet accompanies Applicant's time records are also annexed hereto as **Exhibit "B"**.

## SUMMARY OF THE CHAPTER 11 CASES AND SERVICES RENDERED

16.     In order to inform the Court of the nature, extent, detail and complexity of the

services rendered, and for the Court to have an overall picture of the Applicant's activities on

behalf of the Debtor, Applicant has set forth the details for its services herein below.

**A.      History Of The Debtor**

17.     Judde Properties, Inc. was formed as a New York corporation in 2005 for the

purpose of holding and managing real estate. Ralph Essien is the sole shareholder of the Debtor

and is also the Debtor's sole officer and director.

18.     The Debtor has three (3) affiliates Methuselah Associates, Judde Investment, Inc.

and Judde Realty, Inc.  Each of the Debtor's affiliates are operated independently of the Debtor

and are not involved in the proceedings except that Methuselah Associates, LLC as a guarantor

of the Debtor's secured obligations to the Debtor's mortgagees will be guaranteeing the Debtor's

Chapter 11 Plan payments.

19.     In January 2005, the Debtor acquired, certain improved real property consisting of

a commercial building located at 25 Coligni Avenue, New Rochelle, New York 10801 (the

"Building"). The Building houses a medical suite that occupies the first floor of the Building and

is rented on a month-to-month basis to Methuselah Associates, LLC ("Methuselah") a medical

practice wholly owned by the Debtor's principal. The medical suite occupies approximately 75%

of the Building.   The Debtor operates and manages the Building, and pays for the upkeep and

carrying costs of the Building with the rent that it receives from Methuselah and the other tenant

---

[1] The total amount of the pre-petition retainer received by Applicant was $17,000.00. Against said retainer Applicant billed the amount $7,933.00 on account of pre-filing services provided to the Debtor.

in the Building. Notwithstanding the fact that the Debtor and Methuselah are closely held affiliated entities, the Debtor is not responsible for the costs and expenses associated with maintenance and operation of Methuselah's medical practice. Further, the Debtor is not involved in the management or operation of the medical practice in any way.

20.    Some time after the Debtor's acquisition of the Building, Methuselah, the tenant bearing the responsibility of paying the lion's share of the rent, began experiencing certain operational and financial difficulties which led to its inability to pay the rent to the Debtor on a timely basis and in fact for certain periods, Methuselah was unable to pay any rent at all to the Debtor. As a result of the Debtor's inability to collect its rents from Methuselah, the Debtor fell behind in its mortgage payments to Zions Bank First National Bank ("Zions Bank") and the Empire State Certified Development Corp., as servicing agent for the United States Small Business Administration ("SBA").

21.    As a result of the default in its mortgage payments to Zions Bank, on or about May 29, 2007, Zions Bank commenced a foreclosure action against the Debtor in the Supreme Court of the State of New York captioned, <u>Zions First National Bank v Judde Properties Inc,</u> <u>Methuselah Associates, LLC , Ralph Essien et al</u> Index No. 10079/07. Although the Debtor had also defaulted on the SBA mortgage, the SBA did not commence a foreclosure action.

22.    As a result of the foregoing, after consulting with its general counsel, the Bozeman Law Firm, the Debtor retained Applicant as bankruptcy counsel to file a Chapter 11 Petition in order to stay a foreclosure sale that had been schedule for the Debtor's building and to reorganize its business affairs for the benefit of all of its creditors.

**B.** **The Chapter 11 Case**

23.    On or about June 27, 2008 (the "Filing Date"), Applicant on the Debtor's behalf filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "Code"), in the United States Bankruptcy Court for the Southern District of New York, White Plains division.

24.    Immediately after Applicant filed the Debtor's voluntary petition, Applicant began the task of assisting the Debtor in its efforts to stabilize operations.

25.    In order to preserve the Debtor's ability to operate during the Chapter 11 period, Applicant obtained the entry of orders authorizing the Debtor to use cash collateral of its secured creditors Zions Bank and the SBA. In addition, Applicant also sought the necessary orders allowing the Debtor to retain its professionals including Applicant.

26.    Applicant also assisted the Debtor in the preparation and filing of its Schedules of Assets and Liabilities and Statement of Financial Affairs (the Schedules") and the necessary motions extending the Debtor's time to file said Schedules. Shortly thereafter, Applicant sought the approval of a bar date for filing proofs of claims (the "Bar Date") in order to determine the nature and extent of claims against the estate.

27.    Applicant further assisted the Debtor in its efforts to maintain its insurance coverage on its building. Immediately upon completion of the administrative tasks, Applicant turned its attention to the task of assisting the Debtor in the formulation of its Chapter 11 Plan of reorganization. The Debtor's Chapter 11 Plan is now schedule for confirmation on April 21, 2009.

28.    Applicant will herein discuss in some detail the foregoing tasks, so that the Court can gain an understanding of the activities of Applicant.

## FILING OF THE DEBTOR'S BANKRUPTCY PETITION

29.    As stated above, Applicant filed its Debtor's Chapter 11 case as a result of a judgment obtained by Zions Bank and the pending foreclosure sale of the Debtor's Building. As a result of the financial affairs of the Debtor's affiliate, Methuselah, the Debtor found itself it a precarious position, which was in substantial part due to Methuselah's inability to sustain its rent payments to the Debtor. Accordingly, Applicant found it necessary to spend a considerable amount of time in discussions with Methuselah's general counsel reviewing and analyzing Methuselah's financial affairs and its impact on the Debtor's financial affairs in order to prepare and file the Debtor's voluntary petition, negotiate with the Debtor's secured creditors for the use of Cash Collateral and ultimately formulate the Debtor's Plan.

30.    Immediately after Applicant filed the Debtors' voluntary petition for reorganization, Applicant turned its attention to assessing the claims of the Debtor's secured creditors and arranging for the Debtor's use of Cash Collateral.

## EFFORTS TO RESOLVE ZIONS BANK'S MOTION TO LIFT STAY AND OBTAIN USE OF CASH COLLATERAL OF ZIONS BANK AND SBA

31.    As stated heretofore, the Debtor's Chapter 11 petition was filed as a result of the pending foreclosure sale of the Debtor's Building by Zions Bank. Accordingly, after the Filing Date, Applicant turned its attention to resolving the issues with Zions Bank. Unfortunately, immediately after the Filing Date, while negotiating with Zions Bank for the use of Cash Collateral, Zions Bank filed a Motion for Relief from the Automatic Stay, ("Zions" Motion"). As set forth in more detail below Zions Motion sought entry of an Order (i) prohibiting the Debtor's use of Rents; (ii) compelling the Debtor to pay all Rents received since the Filing Date

to the First Mortgagee; and (iii) compelling the Tenant to pay Rents directly to the First Mortgagee pursuant to the Assignment of Rents or, alternatively, seeking relief from the automatic stay to proceed with a foreclosure sale for the Property and any and all of its rights and remedies under state law, pursuant to 11 U.S.C. § 362, or to convert the Debtor's Chapter 11 case to Chapter 7 pursuant to 11 U.S.C. § 1112(b).

32.     In an effort to resolve the Motion brought by Zions Bank and to address the concerns of the SBA and Zions Bank with respect to their mutual interests in the Building, on September 16, 2008, Applicant sought on the Debtor's behalf authority of this Court for the Debtor to enter into two separate Stipulation and Orders providing for the use of cash collateral of Zions Bank and of the SBA, respectively.   Methuselah, as a guarantor of the Mortgage Agreements and Notes, and as the tenant responsible for paying the substantial portion of the rent to the Debtor, was also required to execute the Stipulation and Orders thereby further guaranteeing that the adequate protection payments would be made to the secured creditors.

33.     The task of resolving Zions Motion and obtaining the use of Cash Collateral required considerable time and effort on the part of Applicant because there were several issues to consider, the most important was the issue of sustainable cash flow of the Debtor.

34.     The time and effort spent by Applicant on this task was necessary and essential and benefitted the estate in that the Debtor was able to ensure continued timely payment of overhead expenses.

35.     To accomplish the foregoing, Applicant had numerous meetings and discussions with the counsel for Zions Bank; counsel for the SBA, the Debtor's principal; and Methuselah's counsel and accountant (the Debtor's Accountants) regarding the ability of Methuselah to fulfill

its rent obligations to the Debtor. The foregoing was necessary in order for Applicant to formulate the Debtor's post-petition budget that formed a basis for the resolution of Zions Motion and which also allowed the Debtor to pay its ongoing, necessary and ordinary course post-petition expenses.

36. Applicant submits that, without the use of cash collateral the Debtor risked default on its obligations, which could have resulted in cessation of the Debtor's operations, which would have been detrimental to the Debtors' estate. Therefore the tasks performed by Applicant were in the best interests of the Debtor, its creditors and the estate at large. Accordingly, Applicant was successful in assisting the Debtor in avoiding the risk of not only having insufficient cash with which to meet its post-petition expenses but the Debtor's estate's assets would also have been dangerously compromised thereby risking irreparable harm to the Debtor, the creditors and the estate.

37. Applicant made necessary motions, and in connection with each of the respective Cash Collateral Orders, attended interim and final hearings in order to obtain the requisite judicial approvals for the use of cash collateral and the resolution of Zions Motion which tasks ultimately formed a frame work for Applicant's negotiation of the Debtor's Chapter 11 Plan.

## **RETENTION OF PROFESSIONALS**

38. At the outset of this case the Debtor retained Applicant as its bankruptcy counsel. In order to obtain Court authority for Applicant to represent the Debtor before this Court, Applicant prepared and filed a retention Application, Affidavit and Order. As a result of Applicant's efforts, Applicant's retention was approved by Order of the Bankruptcy Court dated July 21, 2008.

39.     In addition, to the foregoing task, Applicant also sought on behalf of the Debtor, this Court's authority for the Debtor to retain the accounting firm of Klinger & Klinger, LLC ("Klinger") as its accountants in the Chapter 11 proceeding. Accordingly, Applicant prepared and filed on the Debtor's behalf, an Application, Affidavit and Order for the retention of the Klinger & Klinger, LLC as accountants for the Debtor. The retention of Klinger & Klinger, LLC was approved by Order of the Bankruptcy Court dated July 21, 2008.

40.     The foregoing tasks performed by Applicant were necessary and essential in order to obtain Court authority for the Debtor to have competent bankruptcy counsel and accountants.

## PREPARATION AND REVIEW OF SCHEDULES

41.     As a result of the Applicant's efforts, the Debtor's time in which to file its schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules") were extended by the Court.

42.     The extensions allowed Applicant the time to work closely with the Debtor in reviewing the Debtor's books, records and complex pre-petition transactions and litigation in connection with the preparation of the Schedules.

43.     Accordingly, as a result of Applicant's diligent efforts, the Debtor was successful in ultimately filing said Schedules and as a result of said filings, the Debtor was allowed to proceed with other pertinent matters in the proceedings.

44.     Applicant wishes the Court to note that the time expended on this matter was necessary and essential in order to provide the Court and interested parties with a complete picture of the Debtor's financial affairs.

## ESTABLISHMENT OF A BAR DATE

45. Applicant prepared an Order, Application and proposed notice with respect to the establishment of a bar date. Pursuant to an Order of the Bankruptcy Court dated October 27, 2008 ("Bar Date Order"), the Court established December 17, 2008 as the last date by which creditors may file proofs of claim in the Chapter 11 Case. Pursuant to the Bar Date Order, notice of entry of the Bar Date Order was mailed, by first class mail, to all known creditors of the Debtor, on October 31, 2008.

46. As a result of Applicant's efforts, a bar date was established and noticed on all creditors thereby allowing the Debtor to obtain a precise picture as to all potential and outstanding liabilities and further facilitate the claims review process.

47. Applicant wishes the Court to note the minimal time expended on this matter.

## CLAIMS RESOLUTION PROCESS

48. In an efficient and expeditious manner, Applicant reviewed all claims filed in this proceeding and compared them with the Schedules. Applicant negotiated with Zions Bank and the SBA and the City of New Rochelle regarding its real estate tax claims in order to fix the claims in the estate which task as essential in Applicant's efforts to negotiate a consensual Plan with the Debtor's secured creditors. Applicant requests that the Court take notice of the central importance to the Debtor's Chapter 11 proceeding of claims resolution without which Applicant could not have proposed on the Debtor's behalf a consensual Chapter 11 Plan.

## PLAN OF REORGANIZATION.

49. Applicant, after extensive meetings, negotiations, correspondence and communications, negotiated a consensual Chapter 11 Plan with the SBA, the City of New

13

Rochelle and Zions Bank.

50.     After filing the Debtor's Amended Chapter 11 Plan and Disclosure Statement, Applicant, moved by Order Scheduling Hearing for approval of the Debtor's Disclosure Statement. As a result of Applicant's efforts, on April 5, 2009, the Court scheduled a hearing on confirmation of the Debtor's Chapter Plan for April 21, 2009.  Applicant currently awaits the entry of the Court's order approving the Disclosure Statement so that it can distribute the Debtor's Chapter 11 Plan to creditors along with a ballot and the order approving the Disclosure Statement.

## OTHER MISCELLANEOUS SERVICES RENDERED

51.     The preceding summary of Applicant's activities in this case cannot include all the details of Applicant's activities, which have occurred over the eight (8) month period. The above description merely summarizes the legal services performed by Applicant. It is virtually impossible to set forth specific details of each and every service rendered as the attorneys for the Debtor are a focus point for inquiries by creditors and other interested parties as to (a) the status of the proceeding, (b) the status of the Debtor and (c) the ultimate disposition of the Chapter 11 case. Notwithstanding same, Applicant's time records annexed hereto provide detailed and specific descriptions of each and every activity performed by Applicant on behalf of the Debtor and the Court is respectfully referred to said records to more fully analyze and review Applicant's activities during the time period of this Application.

52.     The summary above of Applicant's activities in this case cannot include all the details of Applicant's activities, which have occurred during these Chapter 11 cases. Notwithstanding same, Applicant's time records annexed hereto provide detailed and specific

descriptions of each and every activity performed by Applicant on behalf of the Committee, and the Court is respectfully referred to said records to more fully analyze and review Applicant's activities during the period of request herein.

53.    Applicant attempted to attend to each and every required activity relating to the Chapter 11 cases in an expeditious, efficient and economical matter in order to provide the maximum benefit to these estates.    In addition, duplicative efforts were avoided wherever possible.

## CASE STATUS

54.    In accordance with the United States Trustee Guidelines dated March 22, 1995, Applicant hereby represents, to the best of its knowledge and based upon information and belief, the following:

a.    The Debtor's estate will have sufficient cash on hand to pay all of the fees requested in this Application as well as the applications of the other professionals seeking compensation at this time pursuant to the provision of the Debtor's Chapter 11 Plan.

b.    The Debtor's estate has not accrued any unpaid administrative expenses except for the fees of the Chapter 11 professionals or all such administrative expenses will be paid on confirmation of the Debtor's Plan;

c.    All United States Trustee fees have been paid on a current basis; and

d.    The Debtor has filed all monthly operating statements in a reasonably timely manner.

## APPLICABLE LEGAL STANDARDS

55.     Section 330(a) of the Bankruptcy Code provides that a Bankruptcy Court may

award to a professional person employed under Section 327:

> (A)  reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person employed by any such person; and
>
> (B)  reimbursement for actual, necessary expenses.

* * *

> (3)(A)   In determining the amount of reasonable compensation to be awarded, the

court shall consider the nature, the extent, and the value of such services, taking into account all

relevant factors, including –

> (A)   the time spent on such services;
>
> (B)   the rates charged for such services;
>
> (C)   whether the services were necessary to the administration of, or beneficial at

the time at which the service was rendered toward the completion of, a case under this title;

> (D)   whether the services were performed within a reasonable amount of time

commensurate with the complexity, importance and nature of the problem, issue, or task

addressed; and

> (E)     whether the compensation is reasonable based on the customary

compensation charged by comparably skilled practitioners in cases other than cases under this

title.

Section 503(b)(2) of the Bankruptcy Code provides that:

After notice and a hearing, there shall be allowed administrative expenses . . . including . .

. compensation and reimbursement awarded under section 330(a) of this title . . .

56.    Although the Supreme Court has not ruled on the proper method for determining reasonable fees under Section 330(a), the Court has established guidelines generally applicable to awards of attorneys' fees under other federal statues, which require that the fee awarded be reasonable. See Pennsylvania v. Delaware Valley Citizens' Council for Clear Air, 478 U.S. 546 (1986) (construing standards for award of fees under § 304(d) of the Clean Air Act ("Delaware Valley I"); Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711 (1987) ("Delaware Valley II"). In Delaware Valley I, the court concluded that the "lodestar" approach to determining fees for services performed, as articulated in Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3rd Cir. 1973), was preferable to other, more subjective methods: "[T]he 'lodestar' figure includes most, if not all, of the relevant factors comprising reasonable attorneys' fees." Delaware Valley Citizens' Counsel for Clean Air at 565. Courts in this Circuit have generally followed the lodestar guidelines for fee awards. In re United States Football League, 887 F.2d 408, 413 (2d Cir. 1989); City of Detroit v. Grimmel Corp., 560 F.2d 1093, 1098 (2d Cir. 1977) ("Grinnel II"); City of Detroit v. Grinnel Corp., 495 F.2d 448, 471 (2d Cir. 1974) ("Grinnel I").

57.    Lodestar. Under the lodestar calculation, a reasonable hourly rate is set by the court based on a number of factors, including the difficulty of the task, the prevailing market rate for counsel of the petitioner's experience, counsel's normal billing rate, and the rates awarded by other courts in similar circumstances. In Grinnel II, the Second Circuit calculated attorneys' fees by "multiplying the number of hours expended by each attorney involved in each type of work on the case by the hourly rate normally charged for similar work by attorneys of like skill in the

area." Grinnel II at 1098. Once the base or "lodestar" rate is established, "other less objective

factors such as the risk of litigation, the complexity of the issues, and the skill of the attorneys,

could be introduced to determine a final fee amount." Id. The American Bankruptcy Institute

favors the lodestar approach as "giving the courts a simple mathematical formula to apply as the

starting point for the analysis, with the reasonableness inquiry narrowed principally to the hourly

rate and time spent factors." American Bankruptcy Institute National Report on Professional

Compensation in Bankruptcy cases (G.R. Warner rep. 1991) p. 144.

58.     The first step to be taken in a lodestar analysis is to determine the nature and

extent of services rendered. As is set forth more fully in the foregoing paragraphs and in **Exhibit

"B"**, Applicant's professionals and paraprofessionals have expended during the Fee Period a

total of 173.10 in rendering legal services to the Debtor. Applicant respectfully submits that the

hours worked by Applicant's personnel were both reasonable and necessary.

59.     The next step to be taken is to establish a reasonable hourly rate. Section 330(a)

of the Bankruptcy Code provides for the award of reasonable compensation for actual and

necessary services performed by professionals employed pursuant to Section 327 and 1103 of the

Bankruptcy Code "based on the time, the nature, the extent, and the value of comparable services

other than in a case under this title." See Also Collier on Bankruptcy, ¶330.02, p. 330-12 (1st Ed.

1996). The Bankruptcy Code thus rejects the "principle of economy" which existed under the

Bankruptcy Act. "Notions of economy of the estate in fixing fees are outdated and have no place

in a Bankruptcy Code." 124 Cong. Rec. 11,0899 (daily ed. Sept. 28, 1978) (statement of

Congressman Edwards on policies underlying Section 330). Accord In re Bible Deliverance

Evangelistic Church, 39 B.R. 768, 774 (Bankr. E.D. Pa. 1984); In re Penn-Dixie Industries Inc.,

18 B.R. 834, 838 (Bankr. S.D.N.Y. 1982).

60.     Indeed, Congress has made clear that the fees paid in bankruptcy cases must be no

less than those paid in other cases involving legal specialties with comparable complexities and

responsibilities: "Bankruptcy specialists . . . if required to accept fees in all of their cases that are

consistently lower than fees they could receive elsewhere, will not remain in the bankruptcy

field." H.R. Rep. No. 595, 95th Cong. & Admin. News, p. 5787.  Consistent with the intent of

Congress as expressed in the legislative history of the Bankruptcy Code, it is "necessary to

compensate bankruptcy attorneys, whenever possible, at the highest rate of compensation

available for their efforts."  In re Bible Deliverance Evangelistic Church, supra, 39 B.R. at 773.

See also In re Penn-Dixie Industries, Inc., supra, 39 B.R. at 838 (a liberal standard of

compensation is needed to "encourage successful administration of estates by attracting

bankruptcy specialists of high quality").   In sum, Congress intended that allowance of

professional fees in bankruptcy cases should be at market rates in the market in which they

customarily practice. In re Jenson-Farley Pictures, Inc., 47 B.R. 557, 578 (Bankr. D. Utah 1985).

61.     The rates being charged by Applicant are commensurate with those typically

charged by Applicant and other firms in the Southern and Eastern Districts of New York as well

as those of other firms specializing in bankruptcy matters. Applicant's blended hourly rate in this

Chapter 11 case is $437.29. Accordingly, the lodestar amount of fees sought by Applicant (its

customary hourly billing rate multiplied by the reasonable and necessary amount of time spent) is

both reasonable and appropriate.

62.    The Johnson v. Georgia Highway Test.  The lodestar calculation has largely

supplanted the twelve-factor test of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th

Cir. 1974), which had gained prominence under the Bankruptcy Act. See Pennsylvania v.

Delaware Valley Citizens' Council for Clean Air, 478 U.S. at 546 (1986).  ("The lodestar figure

includes most, if not all, of the relevant factors comprising a 'reasonable' attorney's fee"); In re

Cena's Fine Furniture, Inc., 109 B.R. 575, 581 (Bankr. E.D.NY. 1990) (the Supreme Court makes

clear that the lodestar amount is presumed to subsume the twelve factors articulated by Johnson);

In re Paster, 199 B.R. 468, 469 (E.D. Pa. 1990) (the lodestar method of fee calculation is the

appropriate method of determining attorneys' fees in all federal courts, including the bankruptcy

courts).  The Supreme Court, in another context, acknowledged that the lodestar was the

"centerpiece" for the computation of a reasonable hourly rate; however, the Court suggested that

the twelve Johnson factors could be considered for adjustments to the lodestar calculation.

Blanchard v. Beraeron, 489 U.S. 67, 74 (1989).

63.    A number of courts do still adhere to the Johnson test, or combine the two tests by

using the lodestar calculation and adjusting the resulting figure by reference to the relevant

Johnson factors. See e.g., In re Nine Associates, Inc., 76 B.R. 943 (Bankr. S.D.N.Y. 1987): In re

Cuisine Magazine, Inc., 61 B.R. 210 (Bankr. S.D.N.Y. 1986); In re Affinito & Son, Inc., 63 B.R.

495 (Bankr. W.D. Pa. 1986).

64.    Time, Nature and Extent of Services, Results Obtained and Related Factors.  The

foregoing summary description together with cover sheet, schedules and detailed time slips

attached hereto detail the time, nature and extent of the professional services rendered by

Applicant for the benefit of the Debtor and the estate during the period covered by this

Application. Further, Applicant believes that the time spent was justified by the extremely favorable and beneficial results that have been achieved thus far.

65.    The services rendered were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed. Whether reviewed individually as to each of the tasks described above or collectively as a whole, the time expended by Applicant has been reasonable and efficient to accomplish the needs of the Debtor in this Chapter 11 Case.

66.    <u>The Skill Requisite to Perform the Legal Services Properly</u>. In order to perform the services and obtain the results required in its representation of the Debtor, substantial legal skill and experience in the areas of litigation and negotiations were required by Applicant.

67.    <u>Preclusion of Other Employment</u>. Adequate representation of the Debtor in this Chapter 11 case has required a commitment of the resources of Applicant. Although Applicant was not precluded from accepting other engagements as a result of its representation of the Debtor matters in this case was treated by Applicant in an expeditious and professional manner. Also, various matters on behalf of the Debtor required Applicant to devote considerable time, often to the preclusion of expending time on other active matters within Applicant's office.

68.    <u>Time Limitations or Other Circumstances</u>. Many of the matters on behalf of the Debtor have required the necessity for rapid resolutions on an expedited basis. Furthermore, by anticipating the needs of the Debtor, Applicant has been able to achieve results at a pace and/or a basis less pressured than may otherwise have been the case had Applicant not been attentive to the needs and circumstances of the Debtor.

69.    The Customary Fee.  The hourly rates of the attorneys of Applicant set forth on attached **Exhibit "B"** reflect the hourly rates billed by Applicant to its clients in other Chapter 11 matters.

70.    Awards in Similar Cases.    The amount requested by Applicant is not unreasonable in terms of awards in cases of similar magnitude and complexity.   The compensation requested by Applicant comports with the mandate of the Bankruptcy Code, which directs that services be evaluated in light of comparable services performed in non-bankruptcy cases in the community.   The hourly rates requested by Applicant's attorneys are billed by Applicant to both its court-approved and regular commercial clients, notwithstanding the risk of non-payment in this case.

71.    Whether the Fee is Fixed or Contingent.   Applicant's compensation in this Chapter 11 Case is subject to the approval of the Court.  The Applicant's compensation should reflect its assumption of the high degree of risk of non-payment and its delay in payment in addition to the results achieved thus far.

72.    The Experience, Reputation and Ability of the Attorneys.  The attorneys of Applicant working on this Chapter 11 Case are experienced in matters of this kind as previously stated herein.

## ALLOWANCES FOR COMPENSATION

73.    During the course of Applicant's retention during the period of request herein, Applicant has been caused to render 173.10 hours of professional services to the Debtor. The professional services rendered by Applicant demanded a high degree of said Applicant's professional competence and professional responsibility.  Finally, Applicant sought to render

22

such services in an efficient and economical manner on the legal problems which were presented to Applicant and which ranged through many specialties of law. Applicant also attempted on each and every occasion to avoid duplication of services performed by the other professionals retained in these proceedings. Applicant submits that the value of the services rendered by it on behalf of the Debtor was necessary, essential and beneficial to the estate at large.

74.     In conformity with the practices of the Applicant, that due to the pressures of other business matters during the course of the day, or inadvertence, not every single minute detail for Applicant's services were recorded by Applicant, and Applicant is not seeking compensation for same.   In addition, Applicant does not charge for regular mailing and *deminimis* telephone calls. Applicant is not seeking compensation for said time but asks the Court to take cognizance of this.

75.     In view of the difficulties inherent in this case, the contingency of Applicant's compensation, the standing in bar of Applicant, the amount of legal services performed, the time consumed, the skill required by Applicant, and most important, the results achieved, Applicant requests that it be allowed the sum of $75,695.50[2] as compensation for all professional services rendered from June 27, 2008 through April 21, 2009, and with respect to disbursements incurred from June 27, 2008 through February 28, 2009, Applicant requests that it be reimbursed the sum of $2,698.28[3].

76.     Applicant respectfully asks the Court to note that the amount of compensation

---

[2] Against the fees and expense being sought by the Rattet Firm, said firm has received a net pre-petition retainer in the amount of $7,468.50. Applicant has and expects to provide additional services on behalf of the Debtor through April 21, 2009, however, Applicant shall not seek any additional fees for services provide during March and services to be provided for the month of April and through the Confirmation of the Debtor's Chapter 11 Plan.

requested by it is most reasonable in light of the substantial services performed and the beneficial results obtained to date.

77.    No agreement prohibited by 18 U.S.C. Section 155 has been made heretofore.

**WHEREFORE,** the Applicant requests that it be granted final allowance for compensation for professional services rendered, as set forth in this Application, to this Applicant in the sum of $75,695.50 and necessary out-of-pocket expenses incurred in the sum of $2,698.28, together with such other and further relief as is just, proper and equitable under the circumstances.

Dated:    Harrison, New York
          April 8, 2009

                        Respectfully submitted,
                        RATTET, PASTERNAK & GORDON-OLIVER, LLP
                        Counsel to the Debtor
                        550 Mamaroneck Avenue
                        Harrison, New York 10528
                        (914) 381-7400

                        By: */s/ Arlene Gordon-Oliver*
                            Arlene Gordon-Oliver

---

[3] Applicant reserves the right to file a supplemental Fee Application for the expenses incurred through confirmation of the debtor's Chapter 11 Plan.